**No. 26-1137**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

Marcus Craig

*Plaintiff-Appellant*,

v.

Brittany Greene, Cathy Ashcraft, Kindel Kestner and Wexford Health Sources, Inc.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of Illinois
No. 3:23-cv-03343-DJQ
Hon. Douglas J. Quivey, Magistrate Judge

---

# APPELLANT'S OPENING BRIEF

---

*/s/ Juneitha Shambee*
Juneitha Shambee, Esq.
Shambee Law Office, Ltd.
701 Main St., Ste. 201A
Evanston, IL. 60202
(773)741-3602
juneitha@shambeelaw.com
*Attorney for Appellant Marcus Craig*
ARDC: 6308145

## DISCLOSURE STATEMENT

Appellate Court No: 26-1137
Short Caption: *Craig v. Greene*

1. The full name of every party that the attorney represents in the case:

   Marcus Craig

2. The names of all law firms whose partners or associates have appeared for the party in the case:

   Shambee Law Office, Ltd.

3. If the party, amicus or intervenor is a corporation:
   a. Identify all its parent corporations, if any:

      Not applicable.

   b. list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      Not applicable.

4. Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases

   Not applicable.

5. Provide Debtor information required by FRAP 26.1(c) 1 & 2:

   Not applicable.

Dated: October 23, 2026

*/s/ Juneitha Shambee*
Juneitha Shambee, Esq.
Shambee Law Office, Ltd.
701 Main St., Ste. 201A
Evanston, IL. 60202
(773)741-3602
juneitha@shambeelaw.com
*Attorney for Appellant Marcus Craig*
ARDC: 6308145

# TABLE OF CONTENTS


DISCLOSURE STATEMENT ........ i

TABLE OF AUTHORITIES ........ iv

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

I. Amended Complaint ........ 3

II. Screening order ........ 5

III. Subsequent procedural history ........ 6

IV. Summary judgment record on the Eighth Amendment claim ........ 7

SUMMARY OF ARGUMENT ........ 8

STANDARD OF REVIEW ........ 10

ARGUMENT ........ 11

I. Craig's Allegations Stated a Claim Under the ADA ........ 11

A. Craig is a qualified individual with a disability ........ 11

B. Craig was denied meaningful access to the prison's services, programs, and activities ........ 14

C. Defendant denied Craig meaningful access "by reason of" his disability by failing to provide a reasonable accommodation ........ 16

D. Defendant was deliberately indifferent ........ 19

II. The District Court Erred in Dismissing Rather Than Recognizing Craig's ADA Claim on Pre-Service Screening ........ 22

III. The District Court Erred in Granting Summary Judgment on Craig's Eighth Amendment Claim ........ 28

A. A reasonable jury could find that Defendant Ashcraft was deliberately indifferent to Craig's serious hearing-related medical need ........ 29

B. Genuine issues of material fact preclude summary judgment as to Defendant Kestner.......... 30

C. Defendant Greene's personal, repeated contact with Craig precludes reliance on a pure delegation defense.......... 31

D. The more than eight-month delay in providing functioning hearing aids after medical approval supports an inference of deliberate indifference notwithstanding interim, partial accommodations.......... 32

IV. The District Court Erred in Dismissing Craig's Monell Claim Against Wexford at Screening.......... 33

CONCLUSION.......... 35

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

CIRCUIT RULE 30(d) STATEMENT

REQUIRED SHORT APPENDIX

## TABLE OF AUTHORITIES

### Cases

*A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587 (7th Cir. 2018)............ 17

*Alexander v. Choate*, 469 U.S. 287 (1985)....................................................... 17, 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................... 11

*Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010)............................... 15

*Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010)................................................... 32

*Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003)........25

*Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009)............................................. 31, 32

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................10

*Cesal v. Moats*, 851 F.3d 714 (7th Cir. 2017)..........................................................24

*Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481 (7th Cir. 1997), *abrogated on other grounds by Erickson v. Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ.*, 207 F.3d 945 (7th Cir. 2000)............................................ 15

*Creech v. Ohio Dep't of Rehab. & Corr.*, No. 21-3722, 2022 WL 4138415 (6th Cir. Sept. 13, 2022)........................................................................... 16

*Crockwell v. Dart*, No. 15-cv-825, 2016 WL 4493456 (N.D. Ill. Aug. 26, 2016)............................................................................................................. 20

*Diggs v. Ghosh*, 850 F.3d 905 (7th Cir. 2017)......................................................... 30

*Duffy v. Riveland*, 98 F.3d 447 (9th Cir. 1996).......................................................28

*Estelle v. Gamble*, 429 U.S. 97 (1976).................................................................... 28

*Farmer v. Brennan*, 511 U.S. 825 (1994)................................................................ 29

*Fields v. Liberty Healthcare Corp.*, No. 23-2515, 2025 WL 251158 (7th Cir. Jan. 21, 2025).........................................................................................24

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372 (7th Cir. 2017) (en banc)..................35

*Gomez v. Randle*, 680 F.3d 859 (7th Cir. 2012)......................................... 10, 33, 34

*Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005)...................................................... 32

*Hacker v. Dart*, 62 F.4th 1073 (7th Cir. 2023)................................................. 27, 28

*Hamlin v. Vaudenberg*, 95 F.3d 580 (7th Cir. 1996)............................................. 26

*Hayes v. Snyder*, 546 F.3d 516 (7th Cir. 2008)...................................................... 32

*Hildreth v. Butler*, 960 F.3d 420 (7th Cir. 2020)................................................... 34

*Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667 (7th Cir. 2012).................... 14, 15, 25, 26

*Lacy v. Cook Cnty.*, 897 F.3d 847 (7th Cir. 2018)..................................... 11, 19, 21

*Lange v. City of Oconto*, 28 F.4th 825 (7th Cir. 2022)........................................... 14

*Love v. Westville Corr. Ctr.*, 103 F.3d 558 (7th Cir. 1996).............................. 11, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).............. 11

*McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024).................................................. 15

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)............................................. 34

*Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582 (7th Cir. 2023)................................. 21, 22

*Morris v. Kingston*, 368 F. App'x 686 (7th Cir. 2010)........................................... 28

*Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775 (7th Cir. 2002)............................................................................................... 18

*Ogden v. Atterholt*, 606 F.3d 355 (7th Cir. 2010)............................................ 10, 29

*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)........................................... 15, 16

*Peebles v. Potter*, 354 F.3d 761 (8th Cir. 2004)........................................................ 18

*Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015)............................................. 20, 30

*Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016) (en banc)....................................... 30

*Randolph v. Rodgers*, 170 F.3d 850 (8th Cir. 1999)............................................... 28

*Richard v. Pfister*, 483 F. Supp. 3d 532 (N.D. Ill. 2020)........................................ 20

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013)....... 20

*Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. 2023)............................... 22, 23, 24, 33

*Schmidt v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 342 (7th Cir. 1996).................... 14

*Tennessee v. Lane*, 541 U.S. 509 (2004)................................................................ 17

*Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006)..................................................... 17

*Treadway v. Mullins*, No. 7:20-cv-00571, 2021 WL 4267519 (W.D. Va. Sept. 20, 2021)....28

*United States v. Georgia*, 546 U.S. 151 (2006)....16, 26

*Vance v. Peters*, 97 F.3d 987 (7th Cir. 1996)....31

*Walker v. Snyder*, 213 F.3d 344 (7th Cir. 2000), *abrogated on other grounds by Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003)....25

*Williams v. Liefer*, 491 F.3d 710 (7th Cir. 2007)....33

*Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006) (en banc)....17

*Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001)....10, 34

**Constitutional Provisions**

U.S. Const. amend. VIII....passim

**Statutes**

28 U.S.C. § 636(c)....1

28 U.S.C. § 1291....1

28 U.S.C. § 1331....1

28 U.S.C. § 1915A....5, 7, 9, 10, 22, 24

29 U.S.C. § 794....14

42 U.S.C. § 1983....1, 34

42 U.S.C. § 12102....12

42 U.S.C. § 12132....1, 11, 16

ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553....12, 13, 14

**Regulations**

28 C.F.R. § 35.108....13

28 C.F.R. § 35.130 ........ 17
28 C.F.R. § 35.164 ........ 18
29 C.F.R. § 1630.2 ........ 12

**Rules**

Fed. R. App. P. 3(c)(4) ........ 33
Fed. R. App. P. 4(a) ........ 1
Fed. R. Civ. P. 56(a) ........ 10

## JURISDICTIONAL STATEMENT

Appellant Marcus Craig appeals from the district court's final judgment, entered January 5, 2026, which granted summary judgment to Defendants on Craig's Eighth Amendment claim. Op. 11, ECF No. 38; J., ECF No. 39. That judgment rests in part on the district court's earlier screening orders—a February 28, 2024 merit review order on his original complaint and a September 24, 2024 text order on his amended complaint—which limited Craig's *pro se* pleadings to an Eighth Amendment claim and did not recognize a claim under the ADA. Merit Review Order 2–3, ECF No. 7; Text Order (Sept. 24, 2024); *see* Op. 6, ECF No. 38. The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Craig's claims arise under federal law, including 42 U.S.C. § 1983 and, as argued below, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. *See* Am. Compl. 1, ECF No. 20. This Court has jurisdiction over his appeal pursuant to 28 U.S.C. § 1291 because this is an appeal from a final decision of the district court that disposed of all claims. The parties consented to proceed before a United States Magistrate Judge, *see* 28 U.S.C. § 636(c)(1)—parties agreed on November 7, 2024, ECF No. 23—so this appeal lies directly to this Court. 28 U.S.C. § 636(c)(3). Craig filed a timely notice of appeal on January 26, 2026. Notice of Appeal, ECF No. 40; *see* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1. Whether Craig's *pro se* complaint stated a claim under the ADA.
2. Whether the district court erred in failing to recognize that Craig's *pro se* complaint stated a claim under the ADA.
3. Whether the district court erred at screening in dismissing Craig's *Monell* claim against Wexford Health Sources, Inc.
4. Whether the district court erred in granting summary judgment to Defendant Ashcraft on Craig's Eighth Amendment claim where the record contains evidence of her direct, in-person contact with Craig regarding his unresolved hearing impairment.
5. Whether the district court erred in granting summary judgment to Defendant Kestner where a genuine dispute exists as to when she became personally aware of Craig's ongoing, unaddressed need for hearing aids and what, if anything, she did in response.
6. Whether the district court erred in crediting a delegation defense as to Defendant Greene where the record shows Greene had repeated, personal, in-person contact with Craig regarding his unresolved medical need.
7. Whether the more than eight-month delay between medical approval of hearing aids and Craig's transfer without ever receiving them is

sufficient, standing alone or together with the above, to create a triable issue of deliberate indifference notwithstanding interim, partial accommodations.

## STATEMENT OF THE CASE

### *I. Amended Complaint*

Marcus Craig arrived at Western Correctional Center on June 23, 2022, and "immediately advised Wexford staff about his hearing impaired status." Am. Compl. ¶ 3, ECF No. 20. He was told to "put in for sick call." *Id.* Craig is "100% deaf in his left ear and 80% deaf in his right ear," and he alleged that "being denied proper ADA equipment" resulted in his "missing meals, yard time, gym recreation time and other activities including but not limited to job assignments, medical appointments, law library appointments and other institutional programs." *Id.* ¶ 6.

Craig spent "about four months of attempting to receive proper ADA equipment from the Health Care Unit" without success. *Id.* ¶ 7. On or about October 6, 2022, he told Warden Brittany Greene, the prison's Chief Administrative Officer, "that he was not receiving medical care from the Health Care Unit and that his ADA needs were not being addressed." *Id.* Greene "made no attempts to correct the deficient Health Care Unit even after Plaintiff notified her in writing and on several occasions face to face." *Id.* Craig "still has no hearing aid for his right ear." *Id.*

After "about 90 days of having his ADA concerns totally ignored by Wexford medical staff," Craig wrote to "ADA (American Disabilities Act) Coordinator Cathy Ashcraft" on or about October 6, 2022. *Id.* ¶ 8. He told her "that he was 100% deaf in his left ear and 70-80% deaf in his right ear," and that "prison authorities had completely ignored his disability and even refused to acknowledge it, which caused him to miss numerous meals, as well as daily functions like yard, gym, commissary, health care sick call and law library call passes." *Id.* He "beseeched ADA Coordinator Ashcraft for help, but his pleas went unheeded." *Id.*

On or about November 1, 2022, Craig "finally received an auxillary hearing impaired 'pager watch.'" *Id.* ¶ 9. It did not help, "because Wexford staff did not, nor did ADA Coordinators Ashcraft or Kestner, assign him Hard of Hearing (H.O.H.) status." *Id.* As a result, "the Correctional Officers assigned to the Plaintiff's housing unit rarely utilized the computerized pager system for deaf/hard of hearing prisoners because they were unaware that Plaintiff was such." *Id.* That was "despite numerous attempts Plaintiff made to make them aware of this fact by notifying Warden Brittany Greene, Wexford employed health care staff, and ADA Coordinators Kestner and Ashcraft of his diagnosed and documented disability." *Id.*

After "13 months of having his disability completely ignored, save for the ineffective 'pager watch' that the staff rarely used," and headphones that "ironically exacerbated his problem of hearing line movement announcements,"

Craig filed grievance 23-3070E. *Id.* ¶ 10. In response, ADA Coordinator Kestner stated "that the Plaintiff had finally been granted H.O.H status on the very day the grievance was reviewed": "hard of hearing was palced [sic] on this individual's door today (08/25/2023)." *Id.* That statement was "blatantly and demonstrably false," because by then Craig "was no longer at Western Correctional Center; he had been tranferred [sic] weeks earlier." *Id.* Craig alleged that Kestner's "false statement was a clear attempt to circumvent and defeat the grievance process." *Id.* He sued Greene, Ashcraft, and Kestner "in their individual and official capacities" and sought damages. *Id.* at 1; *id.* ¶¶ 12–13. He also renewed his *Monell* claim against Wexford, alleging a "specific policy"—Wexford's "three tier process of Nurse sick call, NP or PA sick call and finally Doctor call line"—that "results in months long delays in care." *Id.* ¶¶ 4–6.

### *II. Screening order*

The district court "screened" Craig's complaint pursuant to the Prison Litigation Reform Act. Merit Review Order 1, ECF No. 7. This is a process in which the court must "identify and dismiss any legally insufficient claim, or the entire action if warranted." *Id.* (citing 28 U.S.C. § 1915A). The court determined that Craig stated "an Eighth Amendment claim for deliberate indifference to a serious medical need against Warden Brittany Greene, ADA Coordinator Ashcraft, and ADA Coordinator Kestner for failing to ensure he was receiving medical care

for his hearing impairment." *Id.* at 2. The court dismissed all of Craig's other claims, writing that "[a]ny additional claims shall not be included in the case" barring a motion to amend. *Id.* at 3. It also dismissed Wexford, concluding that Craig's allegations "do not permit a plausible inference that the constitutional deprivations he suffered resulted from corporate policies." *Id.* at 2; *see id.* at 4. Craig then filed an amended complaint, Am. Compl., ECF No. 20, which the court screened on September 24, 2024. The court again held that the amended complaint "stated only a claim under the Eighth Amendment" and did not find "that Plaintiff stated a claim under the ADA." Op. 6, ECF No. 38 (citing the September 24, 2024 text order). The same text order again rejected Craig's *Monell* claim against Wexford, reasoning that "no plausible inference arises that the delays he suffered resulted from this policy." Text Order (Sept. 24, 2024).

*III. Subsequent procedural history*

The litigation proceeded, ultimately, to summary judgment. Op. 1, ECF No. 38. The district court in ruling on summary judgment largely confirmed the events as described in Craig's complaint. *Id.* at 1–5. The court nonetheless ruled for Defendants because Craig had failed to show the personal involvement of these Defendants. *Id.* at 10–11. Represented by counsel for the first time in opposing summary judgment, Craig attempted to assert that Defendants violated his rights under the Americans with Disabilities Act (ADA). The court refused to consider

the argument. Citing the September 24, 2024 text order, the court wrote that it had "held pursuant to 28 U.S.C. § 1915A that Plaintiff's amended complaint stated only a claim under the Eighth Amendment." "The Court did not find," it continued, "that Plaintiff stated a claim under the ADA." Op. 6. This was consistent with what Defendants argued at summary judgment, which was that "the Court only allowed Plaintiff to proceed on one count for deliberate indifference" at screening. Defs.' Reply Supp. Mot. Summ. J. 14, ECF No. 34.

Craig timely appealed. Notice of Appeal, ECF No. 40.

### *IV. Summary judgment record on the Eighth Amendment claim*

The summary judgment record, construed in Craig's favor, included the following. Craig testified that he spoke with Defendant Ashcraft in person, during sick calls, about his hearing needs. Craig Dep. 39:12–41:14, ECF No. 29-2; *see* Op. 4. He testified that he met with Defendant Kestner face-to-face "in between October [2022] and February [2023]." Craig Dep. 38:19–20; *see* Op. 4. And he testified that he spoke with Defendant Greene in person approximately five or six times about his hearing issues. Craig Dep. 74:4–75:14; *see* Op. 4.

The prison physician requested approval for new hearing aids on November 30, 2022, and Wexford approved the request the same day. Op. 5. Nearly three months after that approval, a repeat audiogram on February 21, 2023, disclosed "moderate to profound" hearing loss in his right ear and "severe to profound"

hearing loss in his left. *Id.* He never received hearing aids during the remainder of his incarceration at Western. *Id.* In July 2023, Kestner responded to a further grievance by telling Craig he was on a list to see an audiologist in September 2023, and a "hard of hearing" designation was not posted on his cell door until August 25, 2023 — nearly half a year after Kestner became ADA coordinator. Craig Dep. 62:12–17; *see* Op. 5 (stating the date as August 23, 2023). Craig was transferred to East Moline Correctional Center about a week before that notice was posted, never having received functioning hearing aids. Craig Dep. 63:18–19; Op. 5.

The district court granted summary judgment on this record. It held that the evidence did not establish Defendants' personal awareness of Craig's requests before his October 2022 grievances and letters, that Craig did not know who Kestner was until months after he sent those letters, and that Greene was entitled to delegate follow-up to her subordinates. Op. 8–9. The court further held that once medical staff were engaged, the non-medical Defendants were entitled to defer to medical judgment, and that the record did not establish that the resulting delay caused Craig additional harm. *Id.* at 10–11.

## SUMMARY OF ARGUMENT

Craig's *pro se* complaint stated a claim under Title II of the ADA: he is a qualified individual with a disability who was denied meaningful access to prison services because of that disability, and the facility's own failure to provide

functioning hearing aids or a "Hard of Hearing" designation — not a documented safety or security concern — was the reason for the denial. The district court nonetheless dismissed the ADA claim at the screening stage under 28 U.S.C. § 1915A, without ever recognizing that Craig's factual allegations supported it. That was error, and because the complaint must be construed liberally and in the light most favorable to Craig at that stage, this Court should reverse the dismissal and allow the ADA claim to proceed.

Separately, the district court granted summary judgment to Defendants Ashcraft, Kestner, and Greene on Craig's Eighth Amendment deliberate-indifference claim, concluding that the record did not establish their personal involvement or deliberate indifference. That conclusion does not hold up against Craig's own deposition testimony, which the district court's order did not fully credit: Craig testified to direct, in-person contact with each of these Defendants about his unresolved hearing impairment, independent of the disputed October 2022 letters on which the court's opinion centered. Viewed in the light most favorable to Craig, as it must be on summary judgment, that testimony — together with the more than eight-month gap between Wexford's approval of hearing aids and Craig's transfer without ever receiving them — creates triable issues of fact as to each Defendant's knowledge and as to whether the resulting delay caused Craig

cognizable harm. This Court should therefore also reverse the grant of summary judgment and remand both claims for further proceedings, including trial.

Finally, the district court erred in dismissing Wexford at screening. Craig alleged that Wexford maintained a policy of delay and denial of care—a three-tier sick-call process that caused months-long delays—and that this policy denied him the equipment he needed. Those allegations state a *Monell* claim, and the dismissal should be reversed.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a complaint under 28 U.S.C. § 1915A. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). "Applying the same standard used for Rule 12(b)(6) dismissals," this Court "construe[s] the complaint in a light most favorable to [the plaintiff] and accept[s] all well-pled factual allegations as true." *Id.* Because Craig filed his complaint *pro se* without the assistance of counsel, this Court construes his complaint liberally. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

This Court also reviews a grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the non-moving party. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and requires more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ARGUMENT

### I. Craig's Allegations Stated a Claim Under the ADA.

To state a prima facie case of discrimination under Title II of the ADA, a plaintiff must show: (1) "that he is a 'qualified individual with a disability'"; (2) "that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity"; and (3) "that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132). A plaintiff, like Craig, who seeks only damages must also show that the public entity acted with deliberate indifference. *Lacy v. Cook Cnty.*, 897 F.3d 847, 863 (7th Cir. 2018). Craig's allegations satisfied each of these elements, and the district court erred by dismissing his claim at the screening stage.

#### *A. Craig is a qualified individual with a disability.*

Craig qualifies as disabled under the ADA. Disability has a broad definition. As enacted in 1990, the ADA sets forth three ways that a plaintiff may qualify as

disabled. Those include, as relevant here, having "a physical or mental impairment that substantially limits one or more major life activities of [the] individual." 42 U.S.C. § 12102(1). Congress made this category of disability (commonly called an "actual" disability) capacious. In 2008, in response to U.S. Supreme Court decisions limiting the scope of a disability under the ADA, Congress passed the ADA Amendments Act (ADAAA), which broadened this definition. ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(b)(3)–(5), 122 Stat. 3553, 3554. In the "Findings" section of the ADAAA, Congress made explicit that "courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities," and, in particular have "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress." *Id.* § 2(a)(6)–(7). Congress explained in the Act that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* § 2(b)(5). The ADAAA also established a rule of construction that the definition of disability "shall be construed in favor of broad coverage of individuals under this [Act], to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Hearing is expressly enumerated as a major life activity under the ADA. 42 U.S.C. § 12102(2)(A); *see also* 29 C.F.R. § 1630.2(j)(3)(iii) ("it should easily be concluded that the following types of impairments will, at a minimum,

substantially limit the major life activities indicated: Deafness substantially limits hearing”); 28 C.F.R. § 35.108(d)(2)(iii)(A) (same, under Title II).

The Attorney General’s implementing regulations reinforce the breadth of the ADAAA’s definition of an actual disability: “The definition of ‘disability’ shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.” 28 C.F.R. § 35.108(a)(2)(i). As for the word “major” in “major life activity,” it is not to be “interpreted strictly to create a demanding standard,” and whether “an activity is a major life activity is not determined by reference to whether it is of central importance to daily life.” *Id.* § 35.108(c)(2)(i)–(ii). The regulation also establishes broad rules of construction for the term “substantially limits,” which, per the regulation, is not intended to be a “demanding standard” but instead should be interpreted “broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.” *Id.* § 35.108(d)(1)(i). An impairment constitutes a qualifying disability if it “substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population,” and it need not “prevent,” or even “significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.” *Id.* § 35.108(d)(1)(v).

Craig is plainly substantially limited in his ability to hear. He is 100% deaf in his left ear and 70–80% deaf in his right ear. Am. Compl. ¶ 8. His inability to

hear was significant enough that he could not hear—and therefore was not made aware of—announcements for meals, sick call, law library, and other services. *Id.* ¶¶ 9–10. This is more than enough for a qualifying disability under the ADAAA's lenient standard. *See Lange v. City of Oconto*, 28 F.4th 825, 836 (7th Cir. 2022) (analyzing Title II and Rehabilitation Act claims of plaintiff who was born deaf); *see also Schmidt v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 342, 343 (7th Cir. 1996) (Title I claim by severely hard-of-hearing nurse).

*B. Craig was denied meaningful access to the prison's services, programs, and activities.*

Craig also adequately alleged that he was denied "meaningful access" to several different programs, services, and activities. "Programs, services, and activities" also has an expansive meaning, especially in the unique context of prisons. The Rehabilitation Act ("RA"), which this Court interprets coextensively with the ADA, expressly defines "program or activity" to mean "all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b); *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012) (explaining that the "relief available … under" the ADA and Rehabilitation Act "is coextensive" and "the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds."). In the context of prisons and jails, "programs, services, and activities" includes virtually

everything the facility offers, from dining to visitation to educational programming. *See, e.g.*, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) (explaining that the "positive opportunities" provided to incarcerated people, including "the fundamentals of life, such as sustenance, the use of toilet and bathing facilities, and elementary mobility and communication," are "benefits" of programs or services within the ADA's purview); *Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997), *abrogated on other grounds by Erickson v. Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ.*, 207 F.3d 945 (7th Cir. 2000) (noting that educational programming and use of a library and the dining hall are activities under the ADA).

Craig explicitly alleged that his hearing disability impaired his ability to access prison services, including "meals, yard time, gym recreation time," "job assignments, medical appointments, law library appointments and other institutional programs." Am. Compl. ¶ 6; *see also id.* ¶¶ 8–9. Each of these services, standing alone, is sufficient for Craig to have stated a claim. This Court in *Crawford* described both "the library" and "the dining hall" as services. 115 F.3d at 483. This Court repeated the holding as to a dining hall in *Jaros v. Illinois Department of Corrections*. 684 F.3d 667, 672 (7th Cir. 2012) (describing "meals" as services under Title II). In *McDaniel v. Syed*, this Court held that meals and

medical care are qualifying programs and activities under the Rehabilitation Act and the ADA. 115 F.4th 805, 823–24 (7th Cir. 2024). The U.S. Supreme Court in *Pennsylvania Department of Corrections v. Yeskey* explained that "prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs.'" 524 U.S. 206, 210 (1998). In *United States v. Georgia*, the Court recognized that the deliberate refusal to accommodate a prisoner's disability-related needs in "medical care" and other prison programs could deny him the benefits of the prison's "services, programs, or activities." 546 U.S. 151, 157 (2006); *see also Creech v.* Ohio Dep't of Rehab. & Corr., No. 21-3722, 2022 WL 4138415, at *8 (6th Cir. Sept. 13, 2022) ("In the prison context, as here, Title II plainly covers recreational, medical, educational, and vocational activities"). Craig therefore explicitly and many times over alleged that his hearing disability impaired his ability to access prison "services" under Title II of the ADA.

### *C. Defendant denied Craig meaningful access "by reason of" his disability by failing to provide a reasonable accommodation.*

Craig adequately alleged that he was denied meaningful access to these services "by reason of" his disability. For a public entity to be liable under the ADA, a plaintiff must demonstrate that he was denied meaningful access to a public entity's programs, services, or activities "by reason of" his disability. 42 U.S.C. § 12132. This is the ADA's causality requirement. A plaintiff can establish causation by showing that the public entity failed to provide him with a reasonable

accommodation. *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006) (en banc); *see also* 28 C.F.R. § 35.130(b)(7)(i).

Disability discrimination based on a failure to accommodate is different from other kinds of discrimination claims, because a plaintiff does not show that they were treated differently like in typical discrimination claims. A failure-to-accommodate claim instead arises when a defendant treats a disabled plaintiff the *same* as nondisabled persons when difference is required. *See* 28 C.F.R. § 35.130(b)(7)(i). Liability for failing to provide different treatment, i.e., for failing to accommodate, is based on an understanding that "[d]iscrimination against the handicapped … [is] most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985) (interpreting the Rehabilitation Act); *see also Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring) ("Congress understood in shaping the ADA [that addressing discrimination] would sometimes require not blindfolded equality, but responsiveness to difference; not indifference, but accommodation."). The affirmative "duty" that the ADA imposes on public entities to reasonably accommodate disabled people targets that thoughtlessness. *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018); *see also Toledo v. Sanchez,* 454 F.3d 24, 32 (1st Cir. 2006) ("Title II imposes an affirmative obligation on public entities to make their programs accessible to qualified

individuals with disabilities, except where compliance would result in a fundamental alteration of services or impose an undue burden.”)*; see also Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004) (describing a Rehabilitation Act failure-to-accommodate claim as “the failure to fulfill an affirmative duty”). A public entity is only excepted from its duty to accommodate if an accommodation would either impose an undue burden or require a fundamental alteration to their service. 28 C.F.R. § 35.164; *see also Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002). Of course, the accommodation that a public entity provides need not be the plaintiff’s preferred one, so long as it is reasonable.

Craig alleged that he requested a facially reasonable accommodation. He was missing services because of his inability to hear and his need for hearing aids was documented. Am. Compl. ¶ 7. This is not an accommodation that, on its face, involves the “[s]ecurity concerns, safety concerns, [or] administrative exigencies” that could render a requested accommodation unreasonable. *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996). For months, the prison provided him no accommodation whatsoever as he missed a number of services. Am. Compl. ¶¶ 7–9. When they finally provided him an accommodation, it was not hearing aids but rather a “pager watch.” *Id.* ¶ 9. Although it was not the accommodation he requested, Craig attempted to make this accommodation work. *Id.* But neither

medical staff nor "ADA Coordinators Ashcraft or Kestner" assigned Craig "Hard of Hearing (H.O.H.) status." *Id.* Because of this, correctional officers "rarely utilized the computerized pager system for deaf/hard of hearing prisoners because they were unaware that Plaintiff was such." *Id.* Craig made "numerous attempts" to notify "ADA Coordinators Kestner and Ashcraft" of his disability in hope of obtaining the status that would inform prison staff to use his pager watch rather than rely on his ability to hear. *Id.* It did not happen. *Id.* This accommodation (actually documenting him as "Hard of Hearing" status) like the hearing aid does not seem on its face unreasonable as Craig continued to miss services. He has therefore shown that he was denied a reasonable accommodation, which in turn prevented him from accessing services "by reason of" his disability.

*D. Defendant was deliberately indifferent.*

Finally, Craig has adequately alleged that the Illinois Department of Corrections ("IDOC") was deliberately indifferent to his need for accommodation. As a result of the injuries he suffered, Craig seeks damages. Am. Compl. ¶¶ 12–13. To obtain damages under Title II of the ADA, a plaintiff must show that a public entity was deliberately indifferent. *See Lacy*, 897 F.3d at 863. ADA deliberate indifference (which is different from Eighth Amendment deliberate indifference) requires a plaintiff to show that the defendant: "(1) [had] 'knowledge that a harm to a federally protected right is substantially likely,' and (2) '[failed] to act upon

that likelihood.'" *Id.* at 863 (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)). In the ADA context, deliberate indifference is meant to be a lower standard than intentional discrimination, and suitable for damages because "Title II was modeled after Section 504, which was meant to combat discrimination that is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect.'" *Id.* at 863 (quoting *Alexander*, 469 U.S. at 295).

It is well-established in this Circuit that a defendant is deliberately indifferent when a plaintiff affirmatively alerts it to a potential ADA violation and the defendant does nothing about it. *See, e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) ("[P]risoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference."); *Richard v. Pfister*, 483 F. Supp. 3d 532, 538–39 (N.D. Ill. 2020) (holding that a reasonable jury could find that the plaintiff had a valid deliberate indifference claim under the ADA for defendants' failure to transfer him to a facility that could accommodate his disability because the plaintiff submitted multiple grievances and spoke to the defendants, who did not act); *Crockwell v. Dart*, No. 15-cv-825, 2016 WL 4493456, at *4 (N.D. Ill. Aug. 26, 2016) (finding deliberate indifference in the ADA context when "[d]efendants had notice of [plaintiff's] inability to use the lower half of his body, yet did not keep the ADA-

compliant toilet in repair … [and the plaintiff] informed correctional officers that the toilet was broken, but was told that nothing could be done.”).

Here, Craig has alleged that Defendant knew about a potential ADA violation, and did virtually nothing over a period lasting more than a year. Craig alerted Defendant of his disability immediately upon arriving at the prison. Am. Compl. ¶ 3. In writing and face-to-face, he asked medical staff, high-ranking administrative staff, and the prison’s ADA coordinators for help and received nothing for months. *Id.* ¶¶ 7–9. When he finally received any accommodation, it was a “pager watch” rendered useless by staff refusing to enter him in their system as “Hard of Hearing.” *Id.* ¶ 9. Craig, again, reported the failure of this system in providing him access to prison services, to no avail. *Id.* Craig thereby plausibly alleged IDOC knew he needed an accommodation but failed to provide one. This is sufficient to establish deliberate indifference at this stage.

This conclusion is consistent with, not undermined by, this Court’s recent decision in *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 595 (7th Cir. 2023), applying the same *Lacy* deliberate-indifference standard to a Title II claim arising at the same facility. There, this Court affirmed summary judgment because the plaintiff never used the prison’s authorized grievance procedure to flag his need for an accommodation — he never checked the box for “ADA Disability Accommodation,” and his grievances never mentioned a need for one — and

because the partial accommodations he did receive let him still reach every service he needed, "albeit more slowly." *Id.* Craig's case is the inverse on both points. His grievances explicitly requested ADA accommodations by name — a hearing-impaired cell assignment, headphones, a pager watch, and a hearing aid — squarely using the "authorized procedure" *Moore* found lacking. *See* Op. 3, ECF No. 38. And unlike the plaintiff in *Moore*, Craig did not merely experience some inconvenience in reaching services: the one accommodation he received, a pager watch, was rendered useless because neither Ashcraft nor Kestner ever assigned him "H.O.H." status, so correctional officers did not know to use it. Am. Compl. ¶ 9. *Moore* therefore confirms, rather than forecloses, that Craig's allegations are sufficient at this stage.

## II. The District Court Erred in Dismissing Rather Than Recognizing Craig's ADA Claim on Pre-Service Screening.

The Prison Litigation Reform Act implemented a "screening" requirement. 28 U.S.C. § 1915A(a). Before service in prison conditions claims, the district court "shall identify cognizable claims." *Id.* § 1915A(b). The court does so to separate these cognizable claims from those that are frivolous, malicious, or fail to state a claim, which it dismisses. *Id.* Admittedly, this is a difficult task. The court has no briefing or other materials to use, just the complaint itself. And a complaint, especially a *pro se* complaint, need not "allege legal theories" to state a claim but instead only allegations that could plausibly support them. *Sargeant v. Barfield*, 87

F.4th 358, 361 (7th Cir. 2023). This challenging task is nonetheless the one that Congress has imposed on district courts in prison rights cases.

The district court here identified an Eighth Amendment claim against several prison staff members and allowed the claim to proceed to service. Merit Review Order 2, ECF No. 7. It identified and dismissed a *Monell* claim against Wexford, the private company that contracted to provide medical care in Illinois prisons. *Id.* It then held that "[a]ny additional claims shall not be included in the case" absent amendment, thereby dismissing any ADA claim against Defendants. *Id.* at 3.

This Court has squarely held that a *pro se* plaintiff may challenge on appeal a screening-stage dismissal of a claim, even one not specifically articulated in the initial complaint. In *Sargeant v. Barfield*, this Court explained that the "Federal Rules of Civil Procedure do not require a plaintiff to allege legal theories or even facts corresponding to each element of a claim." 87 F.4th 358, 361 (7th Cir. 2023). This is "especially true" for *pro se* plaintiffs. *Id.* "What matters," and the only thing that matters, "is whether the raw materials of [the plaintiff's] complaint—the facts—plausibly suggested that" the defendant violated the law. *Id.* at 362. Once a district court screens out a claim on screening, even if only in a catch-all dismissal of all other claims, a plaintiff is "free to save his rebuttal for appeal" rather than contesting the district court's decision. *Id.* This conclusion flows from the general

principle that a "litigant need not contest an interlocutory ruling as it comes down to preserve an appellate challenge to it." *Id.* Even when a plaintiff could have amended his complaint or filed a motion for reconsideration, doing so is unnecessary to preserve the interlocutory appeal for appellate review. *Id.*

Without as explicitly articulating its rationale, this Court held the same in *Cesal v. Moats*, a case with striking similarities to this one. 851 F.3d 714, 720 (7th Cir. 2017). The district court on screening "pared down [plaintiff's] *pro se* complaint to two counts" concerning prison conditions. *Id.* The plaintiff ultimately lost on summary judgment. *Id.* On appeal, the plaintiff argued that the district court erred in "fail[ing] to recognize" a third claim. *Id.* This Court reviewed the "dismissal under § 1915A *de novo*," holding that the plaintiff had stated a claim. *Id.*; *see also Fields v. Liberty Healthcare Corp.*, No. 23-2515, 2025 WL 251158, at *3 (7th Cir. Jan. 21, 2025) (reviewing a *pro se* plaintiff's argument that a court "overlooked" his claim on screening "de novo, taking a fresh look at the allegations and construing them liberally," and ultimately ruling for the plaintiff). *Cesal* and *Sargeant* are directly on point and control.

In *Cesal*, this Court held that the district court erred in dismissing a claim on screening but nonetheless ruled for the defendants on summary judgment. There is no record on which to decide the ADA claim now. In *Cesal*, the overlooked claim arose from the same insulin facts the parties litigated at summary judgment. Here

the ADA claim was never litigated: no discovery was taken on it, and when Craig's counsel raised it at summary judgment, the court refused to consider it. Nor does the summary-judgment ruling make the error harmless. It turned on the individual defendants' personal involvement, Op. 10–11, and Title II liability runs to the public entity, with no personal-involvement requirement. The remedy is remand for the claim to proceed against the proper defendant. *See Jaros*, 684 F.3d at 670 & n.2.

Nor is the identity of the defendants an obstacle. Title II liability runs to the public entity, and individual-capacity suits are not cognizable under Title II—"the proper defendant is that 'entity.'" *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), *abrogated on other grounds by Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912–13 (7th Cir. 2003); *see also Jaros*, 684 F.3d at 670. But Craig sued Greene, Ashcraft, and Kestner "in their individual and official capacities." Am. Compl. 1, ECF No. 20. Officials sued in their official capacities are sued "as proxies for the state," and a named official "stands in for the agency" he manages. *Walker*, 213 F.3d at 346; *see Jaros*, 684 F.3d at 670 n.2 (where the Director was "named in her official capacity," "the suit is against the agency"). Craig's official-capacity claims against Western's warden and its ADA coordinators are therefore claims against the Illinois Department of Corrections, the proper Title II defendant. If the Court concludes that the Department or its

Director must be named expressly, that is "the sort of pleading gaffe that, ordinarily, district courts should give pro se plaintiffs a chance to correct by amendment." *Jaros*, 684 F.3d at 670 n.2. And if the Department invokes Eleventh Amendment immunity, Title II validly abrogates a State's sovereign immunity for conduct that actually violates the Fourteenth Amendment, which incorporates the Eighth Amendment conduct alleged here. *United States v. Georgia*, 546 U.S. 151, 157–59 (2006).

This Court has not always permitted plaintiffs to obtain *de novo* appellate review of any fragment of their complaint, but the concerns articulated in those cases are not present here. In *Hamlin v. Vaudenberg* a plaintiff alleged that state prison officials did not follow their own regulations in punishing him, violating due process. 95 F.3d 580, 583 (7th Cir. 1996). The *pro se* plaintiff obtained counsel who knew that argument was untenable and thereby argued instead on appeal that the regulations themselves were constitutionally deficient. *Id.* This Court did "not permit creative appellate advocacy to rewrite a faulty complaint." *Id.* (cleaned up). The plaintiff's appellate argument, this Court held, was that "instead of accepting his factual allegations, the district court should have examined them more closely" to find ancillary constitutional problems. *Id.*

The interests articulated in cases like *Hamlin* are simply not at issue here. Craig on appeal asks this Court to accept his complaint, not "rewrite" it. Rather

than "shift" this Court's focus "away from the wording of [plaintiff's] *pro se* complaint," he asks this Court to do the opposite. *Id.* He sued two of the four Defendants by the job title "American Disabilities Act Coordinator." Am. Compl. 2, ECF No. 20. His amended complaint described his "being denied proper ADA equipment," his efforts "to receive proper ADA equipment," and the fact that "his ADA needs were not being addressed." *Id.* ¶¶ 6–7. After "having his ADA concerns totally ignored," he contacted "ADA (American Disabilities Act) Coordinator Cathy Ashcraft" and told her that his disability "was already medically diagnosed and documented and known about by Wexford health care staff" but that "prison authorities had completely ignored his disability." *Id.* ¶ 8.

The letters he attached to his original complaint were even clearer. He wrote to the ADA coordinator that he had been "trying to get A.D.A Accom[mo]dations with no respon[s]e from you." Compl. 11, ECF No. 1. He was missing meals and daily functions "[d]ue to [his] hearing disab[i]lity." *Id.* The same day he wrote to the warden that he had been writing the ADA coordinator for over 90 days, "trying to get a Deaf & Hard of Hearing Communication Plan & A.D.A Accom[mo]dations," and that "no one has got back to me." *Id.* at 12. He had missed a variety of services, "all due to [his] hearing disab[i]lity." *Id.*

Being hard of hearing is a paradigmatic disability, in prison as otherwise. *Hacker v. Dart*, 62 F.4th 1073, 1078, 1084–85 (7th Cir. 2023) (discussing claims

brought by an "almost entirely deaf" detainee who challenged his limited access to "listening devices" and to "a special telephone for the hearing impaired"); *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (analyzing an ADA claim brought by a deaf prisoner); *Duffy v. Riveland*, 98 F.3d 447, 454–55, 459 (9th Cir. 1996) (reversing summary judgment against deaf prisoner who was not provided a qualified interpreter for a disciplinary hearing). A hearing aid or, alternatively, a communication plan that permits access to services despite the inability to hear is a paradigmatic disability accommodation. *Hacker*, 62 F.4th at 1084–85; *Morris v. Kingston*, 368 F. App'x 686, 688–90 (7th Cir. 2010) (discussing ADA claim of hearing-impaired prisoner who missed meals and medication because he could not hear an "audio cue," a problem officials ultimately solved by placing a placard outside his cell); *Treadway v. Mullins*, No. 7:20-cv-00571, 2021 WL 4267519, at *14 (W.D. Va. Sept. 20, 2021) (discussing ADA claim brought by hard-of-hearing prisoner who was denied, *inter alia*, "hearing aid batteries and other hearing aid supplies"). Applying *de novo* review to evaluate whether Craig has stated an ADA claim is therefore appropriate. And as described in Section I, doing so compels reversal.

## III. <u>The District Court Erred in Granting Summary Judgment on Craig's Eighth Amendment Claim.</u>

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To prevail, a plaintiff must show

that a prison official acted with deliberate indifference to a serious medical need — that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the official actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The parties do not dispute that Craig's hearing impairment was an objectively serious medical need. Op. 7, ECF No. 38. The district court nonetheless granted summary judgment to each Defendant, holding that the record did not establish personal involvement or deliberate indifference. *Id.* at 7–11. Viewed in the light most favorable to Craig, as it must be on summary judgment, *Ogden*, 606 F.3d at 358, the record does not support that conclusion.

*A. A reasonable jury could find that Defendant Ashcraft was deliberately indifferent to Craig's serious hearing-related medical need.*

The district court treated the disputed October 2022 letters as the primary evidence of Ashcraft's knowledge and, because receipt was contested, concluded the record could not establish her awareness before that point. Op. 8–9. That analysis understates Craig's own testimony that he spoke with Ashcraft in person, during sick calls, about his hearing needs. Craig Dep. 39:12–41:14; *see* Op. 4. An inmate's testimony about direct, in-person communication is itself sufficient to create a jury question on an official's personal knowledge; it does not depend on a

disputed letter being credited. *See Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015); *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017).

Nor does Ashcraft's role as ADA coordinator and Healthcare Unit Administrator excuse the delay. Ashcraft did provide some accommodations — a communication plan and a vibrating watch on November 1, 2022, and later a VibraLITE 3 watch on March 29, 2023, Op. 4–5 — but she was also the official positioned to ensure Craig actually received the hearing aids approved on November 30, 2022. Op. 5. A reasonable jury could find that providing interim, partial measures while the core need — functioning hearing aids — went unaddressed for months is itself evidence of indifference rather than a complete defense. *See Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016) (en banc) (persisting in a course of treatment known to be ineffective can constitute deliberate indifference).

### *B. Genuine issues of material fact preclude summary judgment as to Defendant Kestner.*

The district court concluded that Kestner could not be liable because Craig did not know who she was when he sent the October 2022 letters. Op. 9. That reasoning addresses only the letters; it does not account for Craig's testimony that he met with Kestner face-to-face "in between October [2022] and February [2023]." Craig Dep. 38:19–20; *see* Op. 4. Nor does it account for Kestner's own

July 2023 grievance response, which shows that as of that date — many months into her tenure as ADA coordinator — Craig was still without hearing aids and merely "on the list" to see an audiologist in September 2023, and that a "hard of hearing" designation was not posted on his cell until August 25, 2023, about nine days after he had been transferred. Craig Dep. 62:12–17, 63:1–64:1; *see* Op. 5.

Taken together, and viewed in the light most favorable to Craig, this evidence permits a reasonable inference that Kestner had personal knowledge of Craig's unresolved need for functioning hearing aids well before the end of his incarceration at Western, and that her response — essentially informing him he remained on a waitlist — did not meaningfully address a serious medical need that by then had gone unremedied for the better part of a year.

*C. Defendant Greene's personal, repeated contact with Craig precludes reliance on a pure delegation defense.*

The district court held that Greene was entitled to delegate follow-up on Craig's grievances to her subordinates, relying on *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Op. 9. But *Burks* does not immunize an official who has personal, direct knowledge of an ongoing constitutional deprivation, gained independent of any delegated process. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (once an official learns from an inmate's communications of an

excessive risk to inmate health or safety, "the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard").

Here, Craig testified that he spoke with Greene in person approximately five or six times about his hearing issues. Craig Dep. 74:4–75:14; *see* Op. 4. Greene's role was not limited to directing an expedited grievance review in October and November 2022; on this record, she had repeated, direct opportunities to learn that the accommodation process remained incomplete well after her office concluded the grievances were "moot." Op. 3. A reasonable jury could find that Greene's personal knowledge, obtained through her own direct contact with Craig rather than through a subordinate's report, distinguishes this case from the pure delegation scenario *Burks* addressed.

*D. The more than eight-month delay in providing functioning hearing aids after medical approval supports an inference of deliberate indifference notwithstanding interim, partial accommodations.*

The district court emphasized that once medical staff became involved, non-medical Defendants were entitled to defer to medical judgment. Op. 10 (citing *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). That deference is not unlimited, and it does not resolve whether the delay itself — from medical approval on November 30, 2022, Op. 5, to Craig's transfer in August

2023 without ever receiving hearing aids, *id.* — caused him cognizable harm. *See Williams v. Liefer*, 491 F.3d 710, 714–16 (7th Cir. 2007) (plaintiff must offer independent evidence that the delay, not the underlying condition, caused some degree of harm).

Craig's evidence — missed meals, yard, gym, commissary, sick call, and law library access, and an inability to attend educational programming without functioning hearing aids, Op. 3–4; Craig Dep. 33:2–34:13 — is directly responsive to that causation standard. A reasonable jury, crediting Craig's testimony and the documented gap of more than eight months between approval and his transfer without ever receiving them, could find that the harm from the delay was neither speculative nor attributable solely to Craig's underlying hearing loss, but to the pace and adequacy of Defendants' response once they were on notice of the problem.

## IV. The District Court Erred in Dismissing Craig's *Monell* Claim Against Wexford at Screening.

The district court also erred in dismissing Wexford. This Court reviews that screening dismissal *de novo*. *Gomez*, 680 F.3d at 864. The ruling is properly before the Court: the notice of appeal from the final judgment "encompasses all orders that, for purposes of appeal, merge into the designated judgment," Fed. R. App. P. 3(c)(4), and Craig was "free to save his rebuttal for appeal" of a partial screening dismissal, *Sargeant*, 87 F.4th at 362.

A private corporation that contracts to provide medical care in a state prison is treated like a municipality under § 1983: it is liable when its own policy causes a constitutional violation. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Craig pleaded exactly that. His original complaint alleged that "Wexford employed a policy of delay and denial of care that resulted in plaintiff's denial of proper ADA equipment and recognition from staff," causing him to miss meals, recreation, programs, and medical and law library appointments, and it expressly asserted a *Monell* claim. Compl. 7, ECF No. 1. His amended complaint identified the policy—a "three tier process of Nurse sick call, NP or PA sick call and finally Doctor call line" that "results in months long delays in care"—and alleged that this "specific policy" caused him to be "denied proper ADA equipment." Am. Compl. ¶¶ 4–6. That is an express policy, not a theory of *respondeat superior*. Construed liberally, *Wynn*, 251 F.3d at 592, those allegations plausibly tie Craig's injury to Wexford's policy. The district court acknowledged the alleged "tiered medical appointment system that delays access to medical professionals," but concluded that "no plausible inference arises that the delays he suffered resulted from this policy." Text Order (Sept. 24, 2024); *see* Merit Review Order 2, ECF No. 7. That was error. Craig alleged that "[i]t is this specific policy that resulted in Plaintiff's injury," Am. Compl. ¶ 6, and at screening that allegation must be accepted as true, *Gomez*, 680 F.3d at 864.

Nor does the grant of summary judgment to the individual Defendants defeat the claim against Wexford. That ruling turned on the personal involvement of non-medical officials. Op. 8–11. An "organization might be liable even if its individual agents are not." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017) (en banc). The record is consistent with Craig's theory: Wexford approved new hearing aids on November 30, 2022, Op. 5; Craig testified that the request then stalled because the facility medical director never acted on it, *id.*; Craig Dep. 54:3–25; and Craig never received hearing aids before his transfer, Op. 5. This Court should reverse the dismissal of Wexford and remand the *Monell* claim.

## CONCLUSION

This Court should reverse the district court's dismissal of Craig's ADA claim and its grant of summary judgment on Craig's Eighth Amendment claim, reverse the dismissal of Craig's *Monell* claim against Wexford, and remand for further proceedings, including trial. On remand, Craig's Title II claim should proceed against the Illinois Department of Corrections through Defendants in their official capacities, with leave to amend if necessary to name the Department or its Director.

Date: October 23, 2026

*/s/ Juneitha Shambee*

Juneitha Shambee, Esq.
Shambee Law Office, Ltd.
701 Main St., Ste. 201A
Evanston, IL. 60202
(773)741-3602

juneitha@shambeelaw.com
*Attorney for Appellant Marcus Craig*
ARDC: 6308145

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I further certify that on October 26, 2026, I served a copy of the foregoing brief and required short appendix on Wexford Health Sources, Inc., a party not registered with CM/ECF, by first-class U.S. mail addressed to 9850 Old Perry Highway, Wexford, PA 15090.

Date: October 23, 2026

*/s/ Juneitha Shambee*
Juneitha Shambee, Esq.
Shambee Law Office, Ltd.
701 Main St., Ste. 201A
Evanston, IL. 60202
(773)741-3602
juneitha@shambeelaw.com
*Attorney for Appellant Marcus Craig*
ARDC: 6308145

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), I certify that:

The undersigned counsel of record for the Plaintiff-Appellant, Marcus Craig, furnishes the following in compliance with Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because this brief contains 8,301 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: October 23, 2026

*/s/ Juneitha Shambee*
Juneitha Shambee, Esq.
Shambee Law Office, Ltd.
701 Main St., Ste. 201A
Evanston, IL. 60202
(773)741-3602
juneitha@shambeelaw.com
*Attorney for Appellant Marcus Craig*
ARDC: 6308145

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by Circuit Rule 30(a) and (b) are included in the Required Short Appendix bound with this brief.

/s/ Juneitha Shambee
Juneitha Shambee, Esq.
Shambee Law Office, Ltd.
701 Main St., Ste. 201A
Evanston, IL. 60202
(773)741-3602
juneitha@shambeelaw.com
*Attorney for Appellant Marcus Craig*
ARDC: 6308145

**REQUIRED SHORT APPENDIX**

**TABLE OF CONTENTS**

Judgment, ECF No. 39 (Jan. 5, 2026)........ A-1

Opinion granting summary judgment, ECF No. 38 (Jan. 5, 2026)........A-2

Merit Review Order, ECF No. 7 (Feb. 28, 2024)........ A-14

Text Order (Sept. 24, 2024)........A-18

Complaint, ECF No. 1 (Dec. 6, 2023) (pages 3–12)........A-19

Amended Complaint, ECF No. 20 (Sept. 25, 2024) (pages 1–6)........A-29

Statutory Addendum: 28 U.S.C. § 1915A(a)–(b); 42 U.S.C. § 1983; 42 U.S.C. § 12102(1), (2)(A), (4)(A); 42 U.S.C. § 12131(1); 42 U.S.C. § 12132........ A-35

E-FILED
Monday, 05 January, 2026 03:10:47 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | | |
|---|---|---|
| **Marcus Craig,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number: 23-cv-3343** |
| | ) | |
| **Brittany Greene, Cathy Ashcraft,** | ) | |
| **Kindel Kestner, and Wexford Health Sources Inc.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## JUDGMENT IN A CIVIL CASE

☐ **JURY VERDICT**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT**. This action came before the Court, and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that Plaintiff Marcus Craig's action against Defendants Brittany Greene, Cathy Ashcraft and Kindel Kestner is dismissed. Defendant Wexford Health Sources Inc. was dismissed on 2/28/2024. Plaintiff shall recover nothing on his claims against each of the named Defendants.

**Dated: 1/5/2026**

s/ Shig Yasunaga
Shig Yasunaga
Clerk, U.S. District Court

E-FILED
Monday, 05 January, 2026 02:28:21 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARCUS CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:23-cv-3343-DJQ |
| | ) | |
| BRITTANY GREENE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

Plaintiff, then proceeding *pro se*, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 29). The motion is granted.

## I. FACTS

Plaintiff was incarcerated at Western Illinois Correctional Center ("Western") from June 22, 2022, through August 16, 2023. UMF 1. Defendants worked at the facility in the following capacities: Defendant Greene was the warden; Defendant Ashcraft was the Healthcare Unit Administrator and served as the facility's Americans with Disabilities Act (ADA) coordinator until February 27, 2023; and, Defendant Kestner was the ADA coordinator from February 27, 2023, through the end of the relevant period. (Doc. 29 at 2; UMF 2-4). Defendants do not provide medical treatment to inmates. (Doc. 29-6 at 3, ¶ 12); (Doc. 29-7 at 2, ¶ 5); (Doc. 29-8 at 1, ¶ 3).

Plaintiff is deaf in his left ear and suffers between 70-80% hearing loss in his right ear. (Doc. 29 at 2; UMF 5). He wears hearing aids to assist with hearing, and, without them, he is unable to hear instructions from officers and notifications regarding movement within the prison, including gym, yard, meals, and the law library. (Doc. 29 at 2; UMF 6). When his incarceration began, officials at Stateville Correctional Center ("Stateville") told Plaintiff, "[w]hen you get to your parent facility, they'll take care of [the hearing aids]." Pl.'s Dep. 29:21-23.

Upon his arrival at Western, Plaintiff possessed one broken hearing aid. (Doc. 29 at 3; UMF 7). During a physical conducted shortly after his arrival at Western, a physician told Plaintiff to submit a request slip regarding his hearing, and "then, we'll get you over and then…figure it out…from there." Pl.'s Dep. 31:2-16. Plaintiff submitted multiple request slips to healthcare officials over the next two months to no avail. *Id.* 30:3-25. The medical records do not disclose that medical staff saw Plaintiff for any issue between his arrival and early November 2022. (Doc. 29-5 at 1-2). Plaintiff's intake form from the date of his arrival notes that he has hearing aids without indication that they were not functioning. *Id.* at 1.

Plaintiff submitted two grievances regarding his hearing that officials received on October 4 and 7, 2022, respectively. (Doc. 29 at 3; UMF 8). The record does not disclose a grievance dated on or before October 4, 2022. Plaintiff provided copies of a grievance dated October 6, 2022, that indicates that he had filed it as an emergency. (Doc. 36 at 9, 13) (Plaintiff checked appropriate box to indicate request for emergency review); *see also* Pl.'s Dep. 57:4-7 (Plaintiff filed at least one grievance as an emergency).

As relevant here, grievances marked as emergencies are forwarded directly to the Chief Administrative Officer (CAO), typically the warden, for a determination regarding whether the issues warrant expedited review. 20 Ill. Admin. Code § 504.840. The grievance Plaintiff provided as an exhibit stated that he is deaf and hard of hearing, that he had attempted to contact Defendant Ashcraft for 90 days regarding this issue, and that he has missed gym, yard, commissary, and call passes for medical care. (Doc. 36 at 9, 13). He requested "to be moved into a Deaf and [Hard of Hearing] Cell, Koss C-L 20 headphones, a Casio watch, a pager watch. Hearing Aid." *Id.*

The copies of Plaintiff's October 6, 2022, grievance do not contain a response from Western officials. *Id.* (no counselor's response or checkmark and signature indicating that the request for emergency review had been considered). According to the grievance logs, Defendant Greene granted Plaintiff's requests for the grievances received on October 4 and 7, 2022, to be handled on an emergency basis on the dates the grievances were received and directed grievance officials to conduct an expedited review. (Doc. 29-3 at 1); Pl.'s Dep. 56:24-57:11. After investigation, Defendant Greene concurred with the grievance officer's recommendation that the grievances were moot on November 29, 2022. (Doc. 29-3 at 1); Pl.'s Dep. 58:16-22; 60:4-11.

Plaintiff also sent letters dated October 6, 2022, to Defendants Greene and Ashcraft. (Doc. 29-4 at 1-2). The letters informed these Defendants that he was hearing impaired, that he had attempted to contact the ADA coordinator for over 90 days to get a communication plan, and that the lack of accommodations resulted in several missed meals, gym, commissary, call passes, sick call, and law library. *Id.* Plaintiff also stated

that he is unable to attend college classes without a hearing aid. *Id.* File stamps on the letters indicate that the Administrative Review Board[1] received them on October 25, 2022, and again on March 13, 2023. *Id.* Defendants Greene and Ashcraft deny receiving these letters. (Doc. 29-6 at 2, ¶¶ 9-10); (Doc. 29-7 at 1, ¶¶ 3-4).

Plaintiff testified that he spoke in person with Defendant Ashcraft about these issues during sick calls and at some point "after October [2022]." Pl.'s Dep. 39:12-41:14. He spoke with Defendant Kestner face-to-face "in between October and February." *Id.* 38:19-20. Plaintiff also spoke with Defendant Greene in person approximately five or six times on dates Plaintiff does not remember. *Id.* 74:4-75:14.

Plaintiff completed a communication plan on November 1, 2022. (Doc. 29 at 3; UMF 10). On the same day, Defendant Ashcraft provided Plaintiff with a MMCall vibrating watch designed to alert Plaintiff to calls for movement within the facility. (Doc. 29 at 3; UMF 11). The communication plan also indicates that Plaintiff had "hearing disability" marked on his ID card and that he had requested a "hearing impaired" notification on his cell. (Doc. 29-5 at 42).

On November 12, 2022, officials issued Plaintiff a pair of CL/20 headphones, and, on November 29, 2022, Plaintiff met with an audiologist who attempted to fix his broken hearing aid. (Doc. 29 at 3; UMF 14, 15). The audiologist recommended a hearing evaluation for new hearing aids. (Doc. 29 at 4; UMF 16).. The prison physician requested

[1] The Administrative Review Board (ARB) reviews appeals of grievances that cannot be resolved at the facility via the counselor, grievance officer, and CAO. Under the rules, an inmate unhappy with a grievance officer's and CAO's responses may appeal by forwarding the responses to the ARB. 20 Ill. Admin. Code § 504.850. Under some circumstances not applicable here, the grievance rules require an inmate to send a grievance directly to the ARB. *See id.* § 504.870(a).

approval for the hearing aids on November 30, 2022. (Doc. 29-5 at 50). Officials at Wexford Health Sources, Inc. ("Wexford"), the private company contracted at the time to provide medical services within Illinois prisons, approved the recommendation same day. *Id.* at 49.

On February 17, 2023, the prison physician requested a repeat audiogram before dispensing new hearing aids. *Id.* at 54. An audiogram conducted February 21, 2023, disclosed "moderate to profound" hearing loss in Plaintiff's right ear and "severe to profound" hearing loss in Plaintiff's left ear. *Id.* at 54-56. Plaintiff did not receive hearing aids while incarcerated at Western. (Doc. 33 at 5; AMF 9).. He attributes this to the facility medical director's failure to respond to the request for same. Pl.'s Dep. 54:3-25.

Defendant Ashcraft provided Plaintiff with a VibraLITE 3 watch[2] on March 29, 2023. (Doc. 29-5 at 57). She issued Plaintiff a new MMCall Vibrating watch on April 21, 2023. *Id.* at 58. Defendant Kestner responded to a grievance Plaintiff filed in July 2023 that he was on the list to see the audiologist in September 2023 and that "hard of hearing" had been placed on Plaintiff's cell door on August 23, 2023. Pl.'s Dep. 62:12-17. Plaintiff had been transferred to East Moline Correctional Center approximately one week earlier. (Doc. 29 at 2; UMF 1).

[2] Plaintiff testified that the watch he received on November 12, 2022, was a "pager watch," also known as a "tactile notification system." Pl.'s Dep. 44:22-45:4. Plaintiff testified that the pager watch is different from the vibrating watch, but the record does not otherwise disclose the difference between the two watches Plaintiff received. Pl.'s Dep. 45:1-4.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. ANALYSIS

As a threshold matter, Plaintiff asserts in his summary judgment response that Defendants violated his rights under the Americans with Disabilities Act (ADA). (Doc. 33 at 6-8). The Court held pursuant to 28 U.S.C. § 1915A that Plaintiff's amended complaint stated only a claim under the Eighth Amendment. (9/25/2024 Text Order). The Court did not find that Plaintiff stated a claim under the ADA. *Id.* Plaintiff did not seek reconsideration of that order or seek leave to file a second amended complaint adding that claim. To the extent that Plaintiff now seeks to amend his complaint to include the new claim, the Court finds that Defendants did not have fair notice of the ADA claim, and the request is denied. *Ollison v. Gossett*, 136 F.4th 729, 739 (7th Cir.

2025) (affirming district court's refusal to consider claims raised in summary judgment response where defendants did not have fair notice of the claims).

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). Non-medical prison personnel may be held liable under the Eighth Amendment if they intentionally deny or delay access to medical care or intentionally interfere with treatment once prescribed. *Estelle*, 429 U.S. at 105. The parties do not dispute that Plaintiff suffered from an objectively serious medical need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

A plaintiff may not hold an official liable under § 1983 just because that official may have been in charge. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (no *respondeat superior*

liability under § 1983); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability [under § 1983] depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). An inmate's written correspondence to prison officials may be sufficient to "establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015); *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017) (prisoner told the warden "that [the prisoner] was waiting on surgery and had a painful knee injury."); *Vance*, 97 F.3d at 993 (prisoner must demonstrate "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to [a constitutional deprivation].").

Plaintiff testified that prison officials told him to submit requests to healthcare officials regarding his hearing issues, and the record does not disclose that Defendants would have known about those requests or that they were responsible for scheduling sick call appointments. Because the medical records disclose no sick call appointments between his arrival at Western and November 1, 2022, the record does not support an inference that Plaintiff's face-to-face meetings with Defendant Ashcraft occurred prior to the dates he submitted his October grievances and sent letters to her and Defendant Greene or that Defendants were otherwise aware of Plaintiff's issues. Plaintiff testified

that he did not inform Defendant Kestner of same before he sent this correspondence. Pl.'s Dep. 36:18-37:4 (Plaintiff did not know who Defendant Kestner was until several months after he had sent the October 2022 letters).

The parties dispute whether Defendants Greene and Ashcraft received Plaintiff's letters. The letters contain no indicia that Western officials received them as part of Plaintiff's grievances, and Plaintiff could have sent them directly to the Administrative Review Board without involving Western officials.[3] Assuming these defendants received Plaintiff's letters on the date Plaintiff presumably sent them, Defendant Greene had already directed officials to investigate Plaintiff's issues on an expedited basis per his October 4, 2022, grievance. A day after Plaintiff sent the letter, she directed expedited review of Plaintiff's October 7, 2022, grievance.

Defendant Greene was entitled to delegate this task to her subordinates. As the Seventh Circuit explained in *Burks*:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.

[3] Plaintiff's letters to Defendants Greene and Ashcraft contain file stamps from the ARB for the same dates as the October 6, 2022, grievances Plaintiff provided. *Compare* (Doc. 29-4 at 1-2), *with* (Doc. 36 at 9, 13). The short period between the date of Plaintiff's grievance and the date on the file stamps suggest that Plaintiff sent copies of the grievance and letters directly to the ARB in addition to submitting the grievance at the facility.

555 F.3d at 595. The record does not disclose that Defendant Greene knew that grievance officials would unnecessarily delay review of Plaintiff's grievances, much less that they did. Defendant Ashcraft thereafter provided medical devices to assist with Plaintiff's issues, and Plaintiff had access to the medical providers responsible for addressing his concerns regarding hearing aids.

Once they had assured medical staff was addressing Plaintiff's complaints, Defendants Greene, Ashcraft, and Kestner were entitled to defer to the judgment of the medical staff providing treatment without fear of liability. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored (citations omitted)); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (no deliberate indifference where nonmedical prison official investigated inmate's complaints and referred then to medical providers who could be expected to address the concerns); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (no deliberate indifference where nonmedical prison official referred inmate complaints to medical providers). Plaintiff attributed the failure to receive hearing aids following his February 2023 audiogram to a non-defendant physician's failure to approve them. Nothing in the record suggests that Defendants were involved in this decision or that they contributed to any delay Plaintiff thereafter experienced. The record does not support an inference that the delay exacerbated Plaintiff's underlying conditions or that the failure to provide the medical devices Plaintiff requested resulted in other constitutional injury. *Williams*

*v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) (plaintiff must show that the delay, not the underlying condition, caused some degree of harm).

The record does not support a reasonable inference that Defendants were responsible for any constitutional deprivation Plaintiff suffered or that Defendants acted with deliberate indifference. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's Eighth Amendment rights.

**IT IS THEREFORE ORDERED:**

1. Defendants' Motion for Summary Judgment [29] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated. Plaintiff remains responsible for the $350.00 filing fee.

2. If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

**ENTERED** this 5th day of January, 2026.

*s/Douglas J Quivey*
DOUGLAS J. QUIVEY
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARCUS CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-3343 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MERIT REVIEW ORDER**

Plaintiff, proceeding *pro se* and presently incarcerated at Robinson Correctional Center, was granted leave to proceed *in forma pauperis*. The case is now before the Court for a merit review of Plaintiff's claims. The Court must "screen" Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*.

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff alleges that he is 100% deaf in one ear and 80% deaf in the other. Plaintiff alleges that he arrived at Western Correctional Center on June 23, 2022, and, despite immediately advising Wexford staff that he was hearing impaired, he experienced delays and

denial of care resulting in him not receiving proper medical equipment and not having the proper medical designations that would alert correctional officials of his condition. This resulted in him missing meals, yard, and recreation time, and other activities.

He alleges that Warden Greene made no effort to help Plaintiff despite him notifying her in writing of the problems he was having on or about October 6, 2022. He alleges that American Disabilities Act Coordinator Cathy Ashcraft also failed to intervene after he wrote her a letter on or about October 6, 2022. He also informed ADA Coordinator Kestner of his disability and problems with receiving care, and she also did not assist. Plaintiff was provided with a auxiliary hearing impaired "pager watch" on or about November 1, 2022, but because he was not designed as "H.O.H." (Hard of Hearing), the correctional officers rarely used the pager system. Plaintiff was finally granted H.O.H. status when he filed a grievance roughly thirteen months after his arrival. However, he still has not received a hearing aid for his right ear.

Plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Warden Brittany Greene, ADA Coordinator Ashcraft, and ADA Coordinator Kestner for failing to ensure he was receiving medical care for his hearing impairment. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc).

While Plaintiff states that he seeks to bring a *Monell* claim against Wexford, Plaintiff's allegations do not permit a plausible inference that the constitutional deprivations he suffered resulted from corporate policies. *Monell v. Dep't of Social Srvcs. of City of New York*, 436 U.S. 658 (1978). The Court finds that he fails to state a claim against Defendant Wexford, and it will be dismissed accordingly.

**IT IS THEREFORE ORDERED:**

**1. Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the court finds that the plaintiff states an Eighth Amendment claim for deliberate indifference**

**to a serious medical need against Defendants Greene, Ashcraft, and Kestner. Any additional claims shall not be included in the case, except at the court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

**2. This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.**

**3. The court will attempt service on the defendants by mailing each defendant a waiver of service. The defendants have 60 days from the date the waiver is sent to file an answer. If the defendants have not filed answers or appeared through counsel within 90 days of the entry of this order, the plaintiff may file a motion requesting the status of Page 3 of 4 service. After the defendants have been served, the court will enter an order setting discovery and dispositive motion deadlines.**

**4. With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.**

**5. The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth the defendants' positions. The court does not rule on the merits of those positions unless and until a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered.**

**6. This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the clerk. The plaintiff must mail his discovery requests and responses directly to defendants' counsel. Discovery requests or responses sent to the clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the court has entered a scheduling order, which will explain the discovery process in more detail.**

**7. Counsel for the defendants is hereby granted leave to depose the plaintiff at his place of confinement. Counsel for the defendants shall arrange the time for the deposition.**

**8. The plaintiff shall immediately notify the court, in writing, of any change in his mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.**

**9. If a defendant fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

**10. The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**11. The clerk is directed to terminate Wexford Health Sources, Inc. as a defendant.**

**12. The clerk is directed to attempt service on Brittany Greene, Cathy Ashcraft, and ADA Coordinator Kestner pursuant to the standard procedures.**

**13. Plaintiff's Motion for Extension of Time [4] is DENIED as moot. Plaintiff's Petition to Proceed in Forma Pauperis was already granted without the additional information Plaintiff requested time to gather.**

Entered this 28th day of February 2024.

_____/s/ Sara Darrow__________
SARA DARROW
CHIEF U.S. DISTRICT JUDGE

**Full docket text:**
TEXT ORDER entered by Chief Judge Sara Darrow on 9/24/2024. Plaintiff's Motion for Leave to File Amended Complaint [17] is GRANTED. Clerk is directed to docket the proposed amended complaint attached to Plaintiff's motion. In his amended complaint, Plaintiff alleges that Defendants Greene, Ashcraft, and Kestner denied or delayed his access to medical devices for his impaired hearing. Plaintiff alleges that Defendant Wexford Health Sources has tiered medical appointment system that delays access to medical professionals. Pursuant to 28 U.S.C. 1915A, Plaintiff states an Eighth Amendment claim against Defendants Greene, Ashcraft, and Kestner for deliberate indifference to a serious medical need. Plaintiff does not state a claim pursuant to Monell v. Dep't of Social Srvcs. of City of New York, 436 U.S. 658 (1978), against Defendant Wexford because no plausible inference arises that the delays he suffered resulted from this policy. Plaintiff filed a Motion to Request Counsel [16]. Plaintiff has no constitutional or statutory right to counsel in this case. In considering the Plaintiff's motion, the court asks: (1) has the indigent Plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007). Plaintiff satisfied the first prong. Plaintiff has personal knowledge of the facts, he has completed some college, and he should be able to obtain relevant documents via the discovery process. This case does not appear overly complex at this time, nor does it appear that it will require expert testimony. The Court finds that Plaintiff is capable of representing himself at this time. Plaintiffs motion [16] is DENIED with leave to renew. Defendants Motion [18] is GRANTED as to the extension of time to file an answer regarding Plaintiffs amended complaint and DENIED as to any other relief requested. Defendants shall file their answer to Plaintiffs amended complaint within 14 days of this Order. Plaintiffs Motion for Status [19] is GRANTED. This Order resolves all matters currently pending. (ANW)

## STATUTORY ADDENDUM

**28 U.S.C. § 1915A. Screening**

(a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for Dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

**42 U.S.C. § 1983. Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

**42 U.S.C. § 12102. Definition of disability (excerpts)**

(1) Disability.—The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

(2) Major life activities.—(A) In general.—For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(4) Rules of construction regarding the definition of disability.—(A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

**42 U.S.C. § 12131. Definitions (excerpt)**

(1) Public entity.—The term "public entity" means—

(A) any State or local government;

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of title 49).

**42 U.S.C. § 12132. Discrimination**

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.